**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 16, 2026

**BY ECF**

The Honorable Andrew L. Carter Jr.
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007-1312

**Re: *United States v. Eddie Dume, et al*, 26 Cr. 97 (ALC)**

Dear Judge Carter:

The Government respectfully submits this letter to appeal the Magistrate Court's order releasing the defendant subject to the satisfaction of certain conditions, and in opposition to defendant Eddie Dume's motion for bail subject to the original order. (Dkt. 38.) As set forth in greater detail below, Dume and his co-conspirators are alleged to have trafficked crack cocaine, heroin, fentanyl, and acetyl fentanyl from a residential neighborhood in the Bronx; several of his co-conspirators possessed or sold firearms in furtherance of that conspiracy, as evidenced by the additional narcotics, firearm, and ammunition recovered from his co-defendants' homes. Dume, whose release on bail was only originally permitted subject to Pretrial's identification of a suitable residence, maintains that he should now be released after narcotics were found in not one, but both of the residences he proposed he be released to. For these reasons, among others detailed below, Dume is unable to rebut the presumption that no condition or combination of conditions short of detention will reasonably ensure the safety of the community. Accordingly, the Government requests that the Court order the defendant remain detained.

## I. Factual and Procedural Background

### A. The Indictment and the Offense Conduct

On March 16, 2026, a grand jury indicted Dume and his co-defendants, Mario Villegas, Elizabeth Peralta, Francheska Doyle, and Jason Ahmed, with conspiring to distribute fentanyl, acetyl fentanyl, cocaine base, crack cocaine, and heroin, in violation of Title 21, United States Code, Sections 841(b)(1)(A), (b)(1)(B), and (b)(1)(C). (Dkt. 1.) Doyle, Peralta, and Ahmed were also indicted with possession and use of a firearm, in violation of Title 18, United States Code, Section 924(c), in connection with, among other things, their sale of a firearm that had previously been used in a shooting in Manhattan. As alleged, beginning in at least January 2025, the defendants, who resided in the Bronx, are alleged to have conspired to acquire and sell a variety of drugs throughout a residential neighborhood in the Bronx. In connection with that

conspiracy, Doyle, Ahmed, Peralta, and Dume either conducted, supervised, or helped facilitate a series of hand-to-hand sales from their residences and nearby locations; Villegas, in turn, operated as one of the conspiracy's main suppliers.

As Dume's text messages with his co-defendants demonstrate, Dume played an active role in distributing narcotics along with other members of the conspiracy. While Dume did not directly sell drugs to the confidential source (the "CS"), Dume and Peralta texted frequently about: (a) obtaining additional narcotics from others, including Villegas, with whom Dume communicated directly to obtain additional drugs; (b) when they were running low on narcotics; and (c) who would serve different customers. Dume's texts with Peralta are replete with dozens of references to narcotics, including heroin ("papers"), methamphetamine ("tina"), crack and powder cocaine ("hard" and "soft"), and stamped wax envelopes containing a combination of heroin and fentanyl that the defendants sold to customers, including the CS.[1] As Dume's text messages reflect, Dume, at times, would be accompanied by his girlfriend when transporting drugs on behalf of the conspiracy, and directed Peralta to send money for drugs to Dume's girlfriend, or to his girlfriend's mother.

B. Dume's Arrest and Pretrial's Inspection of Dume's Residences

Dume and several of his co-defendants were arrested on March 18, 2026. (Dkt. 12.) At that time, law enforcement executed search warrants on several of the defendants' residences. As relevant to Dume, law enforcement searched an apartment on Carlisle Avenue (the "Carlisle Apartment") that Dume, in his pre-trial interview, identified as the part-time residence that he shared with his mother and co-defendant, Elizabeth Peralta, and to which he now seeks to be released. As depicted in the below images, law enforcement recovered narcotics from inside the Carlisle Apartment, including several stamped wax envelopes that were identical to the narcotics that the defendants sold, at various points in time, to the CS.[2]

[1] These wax packages, which were stamped with "Patron," "48," or "First 48," were often referred to by Dume as "Patron."

[2] Law enforcement recovered additional narcotics, a firearm, and ammunition from the residences of several of Dume's other co-defendants, including Villegas and Doyle. Additional narcotics were also recovered from Peralta following her arrest.





Dume himself was arrested at a second address (the "Queens Apartment"), where his pregnant girlfriend and her mother reside.[3]

On March 18, 2026, the defendant was presented before the Honorable Sarah J. Cave, United States Magistrate Judge for the Southern District of New York. *See* Dkt. 35-1 (transcript of March 18, 2026 bail hearing). At that time, and over the Government's objection, Judge Cave ordered that Dume be released subject to Pretrial Services's inspection of the Queens Apartment. Following the defendant's presentment, Pretrial Services inspected the Queens Apartment. During that visit, and as reflected in the supplemental report prepared by Pretrial Services, the only individuals present during the inspection were the defendant's pregnant girlfriend and her mother. At that time, Pretrial Services observed a chunk of an orange-brown substance sitting in plain view in the Queens Apartment, as well as a set of scales.[4] Following that inspection, Judge Cave entered an order detaining the defendant, and permitting defense counsel to "explore alternative residences, and, if one became available, present it to Pretrial Services for another home assessment and *renewal of that application for Mr. Dume's pretrial release*." *See* Dkt. 24 (emphasis added).

## II. Applicable Law

This Court reviews *de novo* the Magistrate Court's bail determination. *See United States v. Paulino*, 335 F. Supp. 3d 600, 609 (S.D.N.Y. 2018). Thus, "a district judge hearing a bail appeal must exercise its independent judgment, and not defer to the magistrate." *Id.*

Typically, the Government bears a dual burden of proving that the defendant is a flight risk by a preponderance of the evidence and that the defendant is a danger to the community by clear

---

[3] Law enforcement did not search the Queens Apartment at the time Dume was arrested.

[4] Based on the Government's discussions with Pretrial Services, as well as the description provided in the Pretrial Services's report, the Government understands that this substance was likely black tar heroin.

and convincing evidence. *See* 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). However, where "there is probable cause to believe that a defendant has committed a crime involving controlled substances that carries a maximum term of imprisonment of ten years or more, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Kirkaldy*, 181 F.3d 83, 83 (2d Cir. 1999) (internal citations and quotations omitted). "Accordingly, in such cases, though the Government still bears the burden of persuasion, it is presumed that the defendant will be detained unless he introduces sufficient evidence to rebut the presumption. The introduction of some evidence by the defendant does not automatically rebut the presumption; instead, the evidence must be weighed along with the factors articulated in 18 U.S.C. § 3142(g)." *United States v. Jackson*, No. 17 Cr. 557 (NSR), 2017 WL 5151665, at *1 (S.D.N.Y. Nov. 3, 2017). These factors include: (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature and the seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Importantly, the Second Circuit has "expressly held in several cases that a bail package that might reasonably assure the appearance of [the defendant] at trial, will not reasonably assure the safety of the community." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (citations and quotation marks omitted) (alteration in original). In other words, even conditions that include home detention or incarceration, electronic monitoring, restricted interactions with others, and promises to comply with the requirements of pretrial release do not necessarily alleviate a defendant's danger to the community. *Id.* at 437; *see also United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991) (reversing the district court's order of pretrial release despite the defendant's lack of criminal history); *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (reversing the district court's order of pretrial release because electronic monitoring and house arrest were insufficient to alleviate the defendant's danger to the community).

The Government may meet its burden "by proffer alone." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (internal quotation marks omitted). "[B]ail hearings are typically informal affairs, not substitutes for trial or discovery" and so "courts often base detention decisions on hearsay evidence." *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004) (internal quotation marks omitted).

## III. No Condition or Combination of Conditions Will Reasonably Assure the Safety of the Community from the Defendant

Dume is a clear danger to the community and should remain detained. Dume was a core participant in a brazen drug trafficking conspiracy that involved the distribution of several lethal and extremely dangerous narcotics, including cocaine, cocaine base, fentanyl, acetyl fentanyl, and heroin. As the evidence demonstrates, Dume helped procure some of those narcotics, including by acting as an intermediary between other members of the conspiracy and its primary supplier. Additional narcotics were recovered from both the residence Dume proposes being returned to, as well as the residence that Dume initially proposed as part of his bail application—both residences that Dume shared, at times, with his pregnant girlfriend and his four-year old child.

A. No Condition or Combination of Conditions Will Reasonably Assure the Safety of the Community from the Defendant

The defendant's actions to date demonstrate that he is undoubtedly a danger to the community.

First, even assuming the defendant succeeds in rebutting the presumption of detention that applies here—and he cannot—the Court must consider the "nature and circumstances of the offense. . ." 18 U.S.C. § 3142(g)(1). Here, the nature of the original offense conduct weighs heavily in favor of detention. The defendant is charged with conspiring to distribute large quantities of narcotics within a residential neighborhood in the Bronx. Narcotics were recovered or observed in both of the defendant's former residences. The defendant's participation in a drug trafficking conspiracy whose object was the acquisition and sale of a variety of drugs, including fentanyl, heroin, and acetyl fentanyl, unquestionably demonstrates utter disregard for the lives of those in his community, who continue to be endangered by the extremely dangerous (and lethal) narcotics possessed and distributed by the defendant and his co-conspirators. The defendant's actions, in turn, were supported by his co-conspirators' access to illegal guns. It is for this reason that courts in this district "regularly find that the distribution of [narcotics] poses a significant danger to the community." *United States v. Arau*, No. 21 Cr. 570 (MKV), 2022 WL 409318, at *2 (S.D.N.Y. Feb. 9, 2022) (collecting cases). This statutory factor alone weighs heavily in favor of detention.

Second, the evidence against the defendant with respect to the narcotics conspiracy, for which he now faces a ten year mandatory minimum, is overwhelming. *See* 18 U.S.C. § 3412(g)(2). The evidence against the defendants include a series of recorded controlled purchases, law enforcement surveillance, reports prepared after each of the controlled purchases, and laboratory reports. That evidence is only compounded by additional evidence of the defendant's participation in the subject offenses, including the scales, drug paraphernalia, additional narcotics recovered from his prior residence and the homes of his co-defendants, an additional firearm and ammunition recovered from his co-defendants' homes, and evidence obtained from the defendants' cellphones pursuant to judicially-authorized search warrants, including text messages where Dume openly discusses selling and acquiring the drugs that were at the heart of his conspiracy. This factor undoubtedly weighs in favor of detention.

In his submission, the defendant argues that his history and characteristics weigh in favor of release. But the defendant's personal characteristics and limited criminal history are not enough to overcome the presumption in favor of detention. The Second Circuit has recognized that it is not necessary for the Government to "present a record of violence or dangerous conduct in order to justify detaining a defendant on grounds of dangerousness." *Rodriguez*, 950 F.2d at 89. While the Government is encouraged by the support the defendant appears to have from members of his family, the fact remains that his father's residence (knowingly or otherwise) was a base from which the defendants previously stored or sold narcotics, and the defendant's other residence had narcotics observed, in plain view, during a court-ordered inspection of the residence the defendant shared with his pregnant girlfriend, his four-year old child, and his girlfriend's mother, none of whom took any steps to remove or report the narcotics that were in display in their home. The defendant's proposal would essentially release him back into the community, secured only by an

electronic monitor, after which the defendant would be returned to the very residence from which he and his co-defendant, at times, committed the crimes with which he is now charged. As further evidence of the insufficiency of those conditions, the first residence the defendant proposed was rejected after Pretrial Services's observed suspected black tar heroin, in plain view, in the residence he shared with his pregnant girlfriend, her mother, and, at times, his four-year old child. That discovery on its own, despite the defendant's efforts to shift the blame onto others or suggest he is ignorant about how those drugs came to be in his apartment, calls into serious doubt the likelihood that the defendant will follow Pretrial and the Court's instructions and abide by the terms of his release if the defendant's request is granted.

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community" that the defendant's release would pose. 18 U.S.C. § 3142(g)(4). The defendant is charged with participating in a months-long narcotics trafficking conspiracy involving large quantities of narcotics. As evinced by the weapons recovered from his co-defendant's home, as well as the controlled sale of a gun that his co-defendants facilitated, members of the conspiracy maintained guns in connection with that conspiracy. This type of conduct fits squarely within the scope of serious danger to any person or to the community. Releasing the defendant on *any* conditions would clearly be inadequate. Instead, "the protection of the community would be left largely to the word of [the defendant] that [he] will obey the conditions," *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993). Taken in combination with the defendant's underlying offense conduct, there is little reason to believe that home confinement or a bond will protect the public from the defendant.

Neither the proposed conditions of release nor the arguments offered by the defendant to date rebut or negate the danger the defendant poses to the community. Indeed, as Judge Vyskocil concluded in rejecting a similar bail package in *Arau*, "[e]ven if [the defendant] were placed on home confinement, he could use a phone to coordinate drug transactions, arrange for the sale or transfer of firearms, take possession of narcotics and firearms from or for other gang members, or otherwise communicate with fellow gang members. . . . [I]t is impossible for pretrial services to adequately monitor all of the ways [the defendant] could continue to commit crimes while on home confinement." *Id.* at *4. Taken in combination with the narcotics stored in plain view in both of the residences the defendant has offered in his successive bail applications, no condition or combination of conditions can reasonably ensure that the defendant not only abides by the conditions of his release, but does not return to the drug trafficking activity that led to his arrest.

## IV. Conclusion

For these reasons, the Government respectfully requests that the Court order the defendant detained.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: ___________________________
Georgia V. Kostopoulos
Assistant United States Attorney
Southern District of New York
Tel. 212-637-2212

cc: All counsel of record (via ECF)